IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01792–PAB–KMT

SAVITRI PANDEOSINGH,

      Plaintiff,

v.

AMERICAN MEDICAL RESPONSE, INC.,
GLOBAL MEDICAL RESPONSE, INC., and
EMERGENCY MEDICAL SERVICES CORP.,

      Defendants.

---

**ORDER**

---

This matter is before the court on "Plaintiff's Motion for Sanctions" [Doc. No. 124] ("Mot.") filed April 22, 2015.  Defendants American Medical Response, Inc. ("AMR"), Global Medical Response, Inc. ("GMR") and Emergency Medical Services Corp. ("EMSC") (collectively "Defendants") filed "Defendant's (sic) Opposition to Plaintiff's Motion for Sanctions" [Doc. No. 130] ("Resp.") on May 19, 2015 and Plaintiff filed her "Plaintiff's Reply in Support of Motion for Sanctions" [Doc. No. 131] ("Reply") on June 2, 2015.

Plaintiff seeks an order from this court awarding sanctions pursuant to Federal Rule of Civil Procedure 37(b) against Defendants in the form of default judgment in her favor, or in the alternative, unspecified adverse inferences for Defendants' alleged continued obstruction of discovery and spoliation of evidence.  Plaintiff attributes three general failures in the discovery process to Defendants as grounds for the request: 1) failure or delay in obtaining the complete

contract between non-parties Global Medical Response Trinidad and Tobago ("GMRTT")[1] and

the Trinidadian Ministry of Health ("MOH"); 2) delay in producing financial documents of

related parties and non-parties relevant to the litigation; and, 3) failure to provide adequate

information about non-party GMRTT's electronic failure on November 10, 2008 that may have

affected the email and documents retained by GMRTT.  Plaintiff argues that "[t]he totality of the

record demonstrates Defendants' discovery abuses were willful and in bad faith," thus justifying

the relief it seeks.  (Mot. at 1-2.)

This court has previously set forth the circuitous path taken by the parties prior to

arriving before the District Court for the District of Colorado.  (*See* Order dated October 20,

2014 at 1-2.)  As noted by this court, while the case was pending in New York, the parties

actively argued and fought over even the simplest discovery requests.  This repeated squabbling

resulted in an award of costs imposed against Defendants by Magistrate Judge Reyes and upheld

by Senior District Judge Block because Defendants "repeatedly failed to comply with

[Magistrate Judge Reyes'] orders in a manner that warrants the award of costs."  (*Id*. at 3,

quoting from the Order of Judge Block.)  This court adopted the sanctions imposed by

Magistrate Judge Reyes and affirmed by Senior District Judge Block, stating

> [t]he sanctions award was based on a finding, essentially, that the parties before
> the court "could" obtain the relevant discovery requested by the Plaintiff, but
> instead were actively and willfully choosing not to produce the documents.

*Id*. at 6.  Important to this motion, this court also held, "[t]o the extent the Plaintiff is

seeking further sanctions with respect to the behavior in New York, that motion will be

denied."  *Id*.

---

[1] GMRTT is represented by its own counsel, Jean-Claude Mazzola.

Subsequent to that ruling, this court granted several more of Plaintiff's discovery requests and imposed costs on Defendants where appropriate. (*See* Doc. Nos. 77, 78, 99 and 114.) On February 12, 2015, a hearing was convened to resolve all outstanding discovery issues and specifically addressed Plaintiff's Motion to Compel Production of Documents on Defendants' Amended Privilege Log [Doc. No. 100], Plaintiff's Motion to Grant Her Motion to Compel Documents on Defendants' Amended Privilege Log as Unopposed [Doc. No. 107] and Plaintiff's Refiled Motion to Compel [Doc. No. 109]. Each of the three motions was granted in part.

### A.    *Contract Documents Annexed to GMRTT/MOH Contract.*

Among the issues discussed at the hearing was the production of certain documents that were allegedly annexed or appended to the contract to provide ambulance services between GMRTT and the Trinidad MOH. The contract originally provided in discovery by GMR to Plaintiff did not contain any annexed documents. At the hearing, the court suggested that GMRTT could likely get a full and complete copy of the contract with all appendices from the MOH with a single, simple request. The court strongly suggested to Defendants' counsel that some pressure might be exerted on GMRTT by Defendants to make such a request to the MOH. (Transcript of February 12, 2015 Hearing ("Trans.") [Doc. No. 115] at 64-65.)

The next day, on February 13, 2015, counsel for Defendants immediately began a campaign to obtain a full and complete copy of the GMRTT/MOH contract. (Resp. at 2; Ex. A.) The request by Defendants to GMRTT that they request a complete copy of the contract from the MOH, although at first apparently resisted by counsel for GMRTT, was ultimately successful

and the MOH produced the contract it had on file between itself and GMRTT to GMRTT who

then forwarded it to Defendants' counsel for production in this case.  (*Id*., Ex. C.)  The contract

provided by the MOH was produced to Plaintiff on May 5, 2015.[2]

The upshot to this dispute is that, apparently, no party to the contract actually appended,

annexed, attached, adjoined, affixed, or fastened the nine specifically named "Contract

Documents" to the actual contract in spite of the language in the body of the contract at Section

II.[3]  While the court finds it reasonable for the Plaintiff to have repeatedly attempted to obtain a

"full" or "complete" contract, including the supposedly annexed Contract Documents, through

discovery, the bottom line is that the documents simply were not annexed as stated.  Therefore,

the Plaintiff's motion now seeks sanctions for willful failure to produce something that has been

produced in full, not only once, but actually several times from different entities including

parties, non-parties and the MOH.

### B.      *Financial Documents of Related Entities.*

Through discovery, Plaintiff has sought financial documents from several related entities

apparently attempting to show GMRTT's  financial dependence on one or more of the

Defendants so as to provide a basis for holding Defendants liable for the alleged negligence of

GMRTT that caused injury to Plaintiff.  This court addressed and resolved the issues surrounding

the financial documents at the February 12, 2015 hearing.  (See e.g., Trans.at 22-39.)

---

[2] Defendants allege that the contract produced by the MOH was identical to the ones previously produced to Plaintiff by Defendants and that none of the contracts have annexed to them documents referenced in the contract.

[3] "SECTION II. CONTRACT DOCUMENTS. The following documents annexed hereto (hereinafter collectively referred to as "the Contract Documents") shall be deemed to be read in context and conjunction with this Contract namely: [listing nine specifically identified documents]." (Resp., Ex. C at 3.)

Defendants state that they have provided to Plaintiff: 1) the bank statements of GEMS[4] and

GMRTT, 2) the bank statements, including cancelled checks and invoices of GMRTT in relation

to GEMS, GMRTT and AMR, and 3) the entries from the financial ledgers of AMR as related to

GMR[5], GEMS, GMRTT and ASSL, to the extent any such entries exist.   Defendants state they

have also produced witnesses for deposition including Timothy Dom and Kristor Sorenson

regarding finances as well as the Affidavits of Ben Olson, explaining the contents of the records.

(Resp. at 5.)

Given the ultimate compliance of the Defendants with the requests for financial

documents and the witnesses offered to explain them, this does not appear to be a compelling

independent ground to award sanctions against Defendants at this time.

C.     *Failure of Defendants to Preserve GMRTT's Pre-Litigation Electronic Documents and Failure of Defendants to Provide Adequate Discovery Regarding a November, 2008 GMRTT Email Failure.*

Plaintiff claims that the Defendants had an obligation to preserve non-party GMRTT's

pre-litigation documents.  It is apparently undisputed that GMRTT, on November 10, 2008, had

some sort of "catastrophic email failure" that may have resulted in the loss of emails.  Plaintiff

seeks default judgment or an adverse inference for any loss of information, alleging that

Defendants have obstructed Plaintiff's ability to obtain information concerning the nature and

extent of the "catastrophic electronic failure" at GMRTT.  (Reply at 10)

---

[4] A Trinidad subsidiary of one of the Defendants that retains a 25% ownership interest in GMRTT. [Doc. No. 51 at 2.]
[5] Defendant GMR had a Technical Services and Training Agreement to provide services to GMRTT along with Amalgamated Security Services Limited, ("ASSL") another Trinidad company.  [Doc. No. 51-2.]

After being alerted in or about March, 2014 to the November, 2008 email failure experienced at GMRTT, Plaintiff thereafter sought to reopen the deposition of Paul Anderson, the CEO and President of GMRTT, presumably to discuss, *inter alia*, this issue.  Magistrate Judge Reyes granted the reopening of the deposition and Defendants were thereafter ordered to pay to Plaintiff her costs to re-open the deposition.  [Doc. No. 116.]  Further, Defendants funded the costs for Mr. Anderson to be brought to New York where he was re-deposed in May 2014.

Defendants claim Plaintiff chose not to make full inquiry of the circumstances surrounding the email failure during Mr. Anderson's re-deposition so as to satisfy any issues.  However, Plaintiff alleges that Mr. Anderson did not have adequate information about the email failure, stating in support that when asked, Mr. Anderson stated that the email failure occurred sometime in 2009 instead of in late 2008.  This court is unconvinced that this demonstrates Mr. Anderson's lack of knowledge.  To be incorrect about the exact date of an event occurring seven years previous - by a scant two months - does not mean that other substantive questioning of Mr. Anderson would not have been fruitful, if it had been attempted.  The Plaintiff, therefore, has already had an opportunity to fully explore this issue.

Further, inquiry into the acknowledged email failure itself is no more than "discovery about discovery" and, while such discovery is sometimes relevant, it is of little real significance to the issues in the case.  The proper scope of discovery is limited by Rule 26(b)(1) to "any nonprivileged matter that is relevant to any party's claim or defense . . . ."[6]  Fed. R. Civ. P.

---

[6] As of December 1, 2015, the Rule continues "and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

26(b)(1).  The Rule also states that information about "the existence, description, nature, custody,

condition, and location of any documents or other tangible things and the identity and location of

persons who know of any discoverable matter" is within the proper scope of discovery.[7]  The

1946 Advisory Committee Notes to Rule 26(b) explained that "[t]he purpose of discovery is to

allow a broad search for facts, the names of witnesses, or any other matters which may aid a

party in the preparation or presentation of his case."  When information about discovery will aid

a party in the preparation of her case, that information is relevant within the meaning of Rule

26(b).  *Strauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 232 (E.D.N.Y.2007); *McNearney v.*

*Washington Dept. of Corrections*, No. C11-5930 RBL/KLS. 2012 WL 3155099, *6 (W.D. Wash.

Aug. 2, 2012).

On the other hand, in *Hanan v. Corso*, No. CIV.A. 95-0292 TPJJMF, 1998 WL 429841

(D.D.C. Apr. 24, 1998), the court found that the plaintiff's attempt to obtain discovery about the

defendants' efforts to respond to plaintiff's prior discovery requests, was not allowable because

(1) the defendants had already filed several declarations addressing that exact subject, and (2) the

plaintiff could not "specify what additional information the new discovery would yield which

these declarations do not contain," and held that any further discovery on the subject was neither

"relevant or likely to lead to admissible evidence." *Id*. at *7.  The *Hanan* court noted that

discovery about discovery would, if permitted in every case, be "fraught with peril." *Id*.

This court is convinced that Plaintiff is not seeking actual documents or information other

than a finding in the abstract that GMRTT, a non-party to this case, did not properly protect

---

[7] Strictly speaking, the location or description of documents pertinent to the case is not relevant
to the parties' claims or defenses, but it is the type of information that can assist a party in
structuring his or her discovery or in pursuing discovery effectively and efficiently. *Ruiz-Bueno
v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *1 (S.D. Ohio Nov. 15, 2013).

information in November 2008, before this litigation was filed, which *might* have been relevant

to the issues in this case.  However, Plaintiff has not said what that information might be or how

the loss of any email would lead to admissible evidence in her case against these Defendants.

Plaintiff's goal, it appears, is not to obtain admissible evidence for trial but rather simply to

obtain sanctions against Defendants in the form of default judgment in its favor, or failing that, to

at least hinder the Defendants' ability to present their side of the case in the face of an

unformulated adverse inference.  Plaintiff is, therefore, seeking impermissible "discovery about

discovery," rather than information reasonably calculated to lead to the discovery of admissible

evidence. *See* Fed. R. Civ. P. 26(b)(1).

### *Conclusion*

The Supreme Court has held that discovery sanctions under Rule 37 serve two important

goals: to penalize and to deter conduct that is in flagrant disregard of the rules of discovery,

observing

> [H]ere, as in other areas of the law, the most severe in the spectrum of sanctions
> provided by statute or rule must be available to the district court in appropriate
> cases, not merely to penalize those whose conduct may be deemed to warrant
> such a sanction, but to deter those who might be tempted to such conduct in the
> absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1976).  Entry of

default judgment as a sanction for discovery abuse is considered an extreme sanction that is only

appropriate in cases of willful misconduct.  *White v. Deere & Co.*, No. 13-CV-02173-PAB-

NYW, 2015 WL 5444310, at *2 (D. Colo. Sept. 16, 2015)(citing *Ehrenhaus v. Reynolds*, 965

F.2d 916, 920 (10th Cir. 1992).)  Before the ultimate sanction of default judgment may be

entered, this Court must make the following findings: (1) that Defendant acted willfully or in bad

faith; (2) that Plaintiff was prejudiced by Defendants' conduct; and (3) that lesser sanctions would not serve the punishment-and-deterrence goals set forth in *National Hockey League* and its progeny. These prerequisites have been developed as a means of ensuring the proper balance between the need to engender good-faith adherence to the rules of discovery, on the one hand, and a commitment to protecting the parties' constitutional and policy interests in a full and fair adjudication of their claims, on the other. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. 1987)

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination trial courts are accorded broad discretion." *Gates Rubber Co. v. Bando Chemical Industries*, Ltd., 167 F.R.D. 90, 102 (D. Colo. 1996)(internal citation omitted). While the court has wide discretion in imposing sanctions on non-compliant litigants, its "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Ehrenhaus,* 965 F.2d at 920 (10th Cir. 1992) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

While the Defendants often disputed both the New York court's jurisdictional authority and their obligation to produce documents belonging to GMRTT, the matters were properly brought before the court and Magistrate Judge Reyes awarded sanctions where appropriate, as did this court. The court simply sees no reason why any further sanctions should be imposed now that Plaintiff has obtained most of the discovery she desires or that is available and she is not prejudiced any longer. On a number of matters, undue expenses Plaintiff incurred to litigate the discovery issues have been awarded to her under sanction orders. To now impose some

general composite sanctions directed at overall obstreperous discovery conduct would be neither just nor fairly directed at specific conduct.  For the foregoing reasons, this court finds that further sanctions against Defendants are not appropriate.

It is therefore **ORDERED**

"Plaintiff's Motion for Sanctions" [Doc. No. 124] is **DENIED**.

Discovery in this case has long been closed.  No date has been set for the filing of dispositive motions nor is the case prepared, through entry of a Final Pretrial Order, for trial.

Therefore, it is further **ORDERED**

1.      The deadline for the filing of any dispositive motion as well as for the filing of any motions pursuant to Fed. R. Evid. 702, is **March 1, 2016**.

2.      A telephonic Final Pretrial Conference is set for **May 3, 2016 at 10:00 a.m.**  The parties shall initiate a conference call and contact chambers at 303-335-2780 at the time of the Final Pretrial Conference.

3.      A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven days before the Final Pretrial Conference.

DATED this 2d day of February, 2016.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge

10